The opinion of the Court was delivered by
DaRGAN, Ch.
Some time in the year 1848, S. D. Dickson and Samuel S. Mills formed a partnership, under the name and style of Dickson & Mills, for the purpose of carrying on business as grocers, and vendors of provisions, in the City of Charleston. In the year 1848, the said Dickson & Mills, being then insolvent, the latter confessed a judgment in the name of the firm of Dickson & Mills to Otis Mills & Co.,, for upwards of thirty thousand dollars. Of the company last named, Beach, the defendant, was a member. On this confession, judgment was signed, and a writ of fieri facias lodged with the sheriff, on the 12th of February, 1848. Two days afterwards Dickson & Mills made an assignment to E. M. Beach of all their effects, consisting principally of their stock in trade, for the benefit of certain creditors named in the assignment. Otis Mills & Co. were prefered creditors, under the provisions of the assignment.
On the 28d February, A. D. 1848, at a meeting of the creditors of Dickson & Mills, called by the assignee, Cornelius Burekmyer, the plaintiff’s intestate, was appointed the agent of the creditors, in pursuance of the provisions of the Act of Assembly, A. D. 1828. He continued to act as such agent until his death, in July, 1848.
*497 On the 12th February, 1848, a writ of fieri facias was lodged with the sheriff in the case of O. Mills & Co. vs. Dickson & Mills, and on the same day the sheriff proceeded to levy on the goods of the defendants in execution, consisting of their, stock in trade, and constituting a large portion of the assigned effects. Yery soon afterwards, Cornelius Burckmyer, the agent of the creditors, and acting in their behalf, made an application to one of the Law Judges (Judge Wardlaw,) to set aside and vacate the execution, for certain alleged irregularities not now necessary to be considered. He suspended the execution until the May Term following, (1848,) at which time the motion was renewed before him, and was refused. From this decision an appeal was taken, which was heard at January Term, 1849, when the decision of the Court below was reversed. By the judgment of the Court of Appeals the execution was declared invalid and was set aside.
On the 12th February, 1848, the sheriff levied on the goods, and the said goods being of a perishable nature, and liable to waste if the sale was delayed, which might be adverse to the interests of all the conflicting claimants, it was agreed upon by all the parties in interest, that notwithstanding the pendency of the litigation, the sheriff should proceed to dispose of his levy by an immediate sale of the goods, without prejudice to the rights of any. Under this agreement, the sheriff did, on the 12th April, 1848, proceed to sell the goods levied on by him under the execution, and the proceeds of sale nett over fifteen thousand three hundred and five dollars and eighty-one cents.
On the 15th June, 1848, E. L. Adams and others, creditors of Dickson & Mills, filed their bill in the Court of Equity, to set aside the assignment, on the allegation of fraud. On the hearing of the cause, the assignment was held to be valid, and the bill was dismissed.
The foregoing statement is made with a view to a better apprehension of the question now before the Court. The present *498 case relates only to a controversy about commissions between the assignee, E. M. Beach, and the agent of the creditors for whose benefit the assignment was made, which agent, as has been already stated, was the plaintiff’s intestate.
The sixth section of the Act of 1828, gives to the assignees, and the agent of the creditors, as compensation, five per cent, for receiving, and two and a half per cent, for paying, to be equally divided between them. As I understand the Act, the agent, or agents, are entitled to half of the commissions, and the assignee, or assignees, to the other half.
The gravamen of this bill is, that the defendant, the as-signee, has appropriated to himself more than a due share of the commissions; and that he has refused to account, and to pay over to the plaintiff the just share to which his intestate is entitled. The prayer is, that the defendant be decreed to account, and pay to him the share of said commissions to which his intestate is entitled. The defendant denies the claim of the plaintiff to the extent of the demand which the plaintiff sets up. He admits a small balance in his hands due the plaintiff on account of commissions, which the Master in his report states to be sixty dollars and eighty-five cents. This the defendant has tendered, but it has been refused unless the whole claim was allowed and paid.
This contest relates solely to the commissions which have accrued, or should accrue, on the sum realized by the sheriff on his sale of the goods levied on by him as aforesaid, which sum eventually came into the hands of the assignee, and was distributed by him among the creditors according to the provisions of the assignment. This may be considered as a mixed question of law and of fact; and the rights of the parties must be determined by the construction which the Court shall put upon certain facts. There are certain prominent facts about which there is no doubt, which must govern the judgment of the Court.
There is no doubt, that the sheriff levied on the goods under *499 the fi. fa. in favor of 0. Mills & Co. Having thus possessed himself of the goods, it is equally certain that he sold them under and by virtue of the execution. The Master so reports the fact to be. He says “ that 0. Mills & Co. entered up their judgment against Dickson & Mills, on the 12th February, 1848, and under a fi. fa., on that judgment, the stock of goods of Dickson & Mills was sold by the sheriff, on the 12th of April, 1848.” The Chancellor, in the statement accompanying his decree, says, “ the sum of money abovementioned, upon which the plaintiff claims commissions, came into the hands of the sheriff by a sale of the stock of Dickson & Mills, under the fi. fa. of 0. Mills & Co.” The sheriff, who was a party defendant to the bill of E. L. Adams and others, filed for the purpose of setting aside the assignment, broadly asserts the same fact.
There is another fact, which is equally clear, namely, that the sheriff paid this sum to 0. Mills & Co. as plaintiffs in that execution. The Master, and the Chancellor, both concur in so reporting. The former says, “ that on the 16th May, 1848, the sheriff, after taking a bond of indemnity, paid over to the plaintiffs in the judgment the nett proceeds of the sales, viz.: fifteen thousand three hundred and five dollars and eighty-one cents.” The Chancellor says, the sum of money realized on the sale by the sheriff, made under the fi. fa. of 0. Mills & Co., was paid over to the latter firm on 16th of May, 1848, on a bond of indemnity. The receipt taken by the sheriff was after this manner. The names of the parties to the execution was stated after the usual form, and a receipt for the money was given by Bailey & Brewster, plaintiffs’ attorneys, and the money was received by them. They immediately afterwards paid it over to 0. Mills & Co. the plaintiffs in the execution.
After the execution was set aside, which was by the judgment of the Law Court of Appeals, at February Term, 1849, and after the dismissal of the bill filed by E. L. Adams and other creditors of Dickson & Mills, to set aside the assignment, (which was held valid by a decree of the Court of Equity, filed *500 18th May, 1849,) the sheriff recognized the right of E. M. Beach to receive the money as assignee. The bond of indemnity, which he had taken from 0. Mills & Co., when he paid them the money, was given up to be cancelled. And he required E. M. Beach, as assignee, to subscribe his name to the receipt which had been previously given to him by Bailey & Brewster, which was done, and this signature bears date the 18th May, 1849.
Between this date, and the date of the sale by the sheriff, (which was on the 12th April, 1848,) the plaintiff’s intestate, the agent of the creditors, died. He died on the 1st day of July, 1848. And the question is, whether under these circumstances, the agent would be entitled to receive commissions upon the money so received by the assignee.
I think the Chancellor has correctly stated the case, when he says, “ Commissions are earned only upon the receipt and payment of money, and the real question upon the plaintiff’s exception is, whether the defendant, as assignee, received and paid the said sum of money in the lifetime of the agent.” That he did not so receive it in the lifetime of the agent, is clear from the undisputed facts which have been mentioned. But the Chancellor proceeds to put a construction upon those facts, which imparts to them a different aspect, and would give them a different operation from that which they are entitled to have. He thinks, that although the assignee did no act in the lifetime of the agent, which purported to be a receipt of the money in his character as assignee, yet he must be considered as having done so. He argues, that inasmuch as Beach received this money on an execution in which he was plaintiff, and which was afterwards set aside, and decided to be invalid, the payment to him by the sheriff must be referred to his legitimate authority to receive the money, which was as assignee; and that this having been done in the lifetime of the agent, therefore the agent was entitled to commissions on said payment. But in this reasoning, one very important fact is left out of *501 view. The payment by the sheriff, on the 16th May, 1848, was not made to Beach personally, and individually, but to Otis Mills & Co. I am far from assenting to the logical correctness of this reasoning, even if Beach had stood alone as the plaintiff in the execution. But how can a payment to Otis Mills & Co., on an execution under which they claimed, though Beach was a member of the firm, be considered a payment to Beach as assignee? Beach had no right to appropriate the funds of the company to objects not falling within the scope of the partnership, without the assent of Mills. So far from agreeing to this, 0. Mills & Co. had withdrawn the money from the hands of the sheriff as their own funds, giving a bond to pay it back to the sheriff in event that the proceeding to set aside the execution should be decided against them.
It has been suggested, that inasmuch as the money received by 0. Mills & Co. did eventually go into their hands as creditors under the assignment, it should be considered as thus paid to them at the date of their receipt to the sheriff, (which was during the life of the agent,) and that therefore he should be entitled to his commissions. But this appropriation of the fund did not take place until after Beach, as assignee, had given another receipt or acknowledgment to the sheriff. And it appears to me that it would be a great distortion of the facts to consider the payment to 0. Mills & Co. a payment to Beach in his character as assignee.
It has been further argued that the Act does not give the commissions jointly to the assignee and agent, but a moiety to each. And that Beach, having received in his settlement with the creditors the whole of the seven and a half per cent, allowed to the agent and the assignee, must be considered ashaving received the excess over what he was entitled to charge, for the agent, and that he cannot now refuse an account to the agent for his half of the commissions. Whether this be the true interpretation of the Act, I am not prepared to say. It is certain that Beach retained the commissions which he charged *502 for his own benefit. It does not help the plaintiff’s case to show that Beach received more commissions than he was entitled to charge. That was a question between him and the creditors. As to the plaintiff’s claim, the question still recurs, whether the agent has earned his commissions, and that depends on the fact whether the money was paid to the assignee in the lifetime of the agent. If this state of facts does not exist, either actually or constructively, it is admitted on all sides that the plaintiff’s claim is unfounded.
It appears from the report of the master, that the plaintiff’s intestate was entitled to three hundred and sixty dollars, fifty-five cents, of which he received three hundred dollars before his death, leaving a balance of sixty dollars, fifty-five cents still due. For this balance he is entitled to a decree. It is ordered and decreed, that the defendant pay to the plaintiff this sum, and that the circuit decree be modified accordingly. And for as much as this balance was tendered to the plaintiff before suit, it is ordered and decreed that the plaintiff pay the costs of this suit.
WithbRS, Wardlaw, and Glovee,, JJ., and DuneiN, Ch., concurred.